### Hunsicker, Jr. v. Insurance Company of North America

*Langdon W. Harris, Jr.*, for plaintiff.

*Robert M. Rowlands*, for defendant.

HAGAN, J., May 9, 1969.—This is a suit in assumpsit, which was tried, in part, without a jury on April 16, 1969. The action was upon an insurance

policy issued by defendant, claiming damages for the value of certain stamps allegedly covered against theft under the terms of the policy. The parties stipulated that the court should first hear testimony and render a decision on the question of coverage. If the court should decide that there was coverage, a subsequent hearing would then be held for the purpose of assessing damages. The hearing of April 16, 1969, was for the purpose of adjudicating the question of coverage, and this opinion will be restricted to the decision of that question.

The essential facts, as agreed to on the record, were as follows:

1. Plaintiff's home was broken into, and volumes 1 and 3 of plaintiff's stamp collection were stolen.

2. At the time of the theft there were two policies in effect with respect to plaintiff's stamp collection. One was with defendant, Insurance Company of North America, hereinafter called "INA," and the other with Liberty Mutual Fire Insurance Company hereinafter called "Liberty Mutual."

3. The Liberty Mutual policy was originally issued February 28, 1962, and was a Personal Articles Floater Policy in the amount of $20,000.

4. On January 10, 1964, the Liberty Mutual policy was increased to $30,000.

5. Proper notice of the theft was given by plaintiff to defendant.

6. Plaintiff received $22,750 from Liberty Mutual, which sum plaintiff contends is less than the actual value of the stamps stolen.

The cover sheet of the INA policy indicates insurance under "Coverage C, Unscheduled Personal Property" in the amount of $16,000. The policy provides, inter alia, under "f" of "Conditions," as follows:

"As respects loss by theft the insurance afforded by this policy shall be excess over any other valid and

collectible insurance available to the Insured against such loss."

The policy further provides:

"Coverage C insures all personal property (except property which is separately described and enumerated and specifically insured in whole or in part by other insurance. . . .)"

The question for decision, therefore, is whether plaintiff's stamp albums were "separately described and enumerated and specifically insured in whole or in part" by plaintiff's policy with Liberty Mutual. If so, coverage would be precluded under the above quoted exception; if not, there would be excess coverage enuring to plaintiff under the above quoted condition of defendant's policy. In order to determine this question we must, therefore, examine the Liberty Mutual policy.

The cover page of the Liberty Mutual policy provides $20,000 coverage (later changed, as indicated above, to $30,000) for "Stamp and coin collections, as listed herein and subject to special conditions as specified hereinafter." Under the coverage section is the word "Schedule" and under that there appears the following:

"It is understood and agreed that this policy covers on unscheduled stamps as per description in assured's letter of May 17, 1955 on file in the Bala Cynwyd office of this company."

The letter of May 17, 1955, referred to in the "Schedule," was offered in evidence as defendant's exhibit no. 1. It is a letter from plaintiff to Liberty Mutual, and commences by stating that plaintiff will give "as complete a list as time allows" of the stamps he owns. The letter then goes on to list seven volumes. Volume 1 is specified as "United States Scotts National Album." The letter then states that "most" of the stamps in that volume have been checked

in an accompanying catalogue, and that the value of the stamps in that album "may run roughly around $20,000." With respect to the other volumes referred to, the letter merely states the total number of stamps in the album and gives a general description and value of the stamps contained in the albums. The letter does not indicate that these stamps are checked in the catalogue.

In the "Conditions" portion of the Liberty Mutual policy a distinction is made between stamps "scheduled herein" and those not "scheduled." With respect to "scheduled" stamps, the company agrees to pay the amount "set opposite the item." As to unscheduled stamps, the company is not liable for more than the actual cash market value of each stamp, not to exceed $250 for any one stamp.

It is clear from the foregoing that plaintiff's stamps were not "separately described and enumerated and specifically insured" in the Liberty Mutual policy itself. To the contrary, they are referred to therein as "unscheduled" stamps. If, therefore, plaintiff's stamps are to be considered as having been "separately described and enumerated and specifically insured" in the Liberty Mutual policy, so as to bring them within the exception of the INA policy, it would have to be by reason of the letter (D-1) referred to in the Liberty Mutual policy.

When we examine D-1, however, we find that plaintiff's stamps are not "separately described and enumerated and specifically insured" therein. Thus, the introduction to the letter specifies that the list which follows is not a complete itemization of plaintiff's stamps, but merely "as complete a list as time allows" of the stamps. As an example, volume 3, which is one of the volumes which was stolen, is described as:

"Volume No. 3. Scotts International Album 1943. Mostly foreign, 20,000 stamps. Value—$1000."

Volume 5 is described as:

"Volume No. 5. American Album 1948. Value $400.00."

Clearly, this cannot be construed as a description and enumeration of the stamps contained in the volume.

As we read the Liberty Mutual policy, the term "scheduled," as used therein, is virtually synonomous with the term "separately described and enumerated," as used in the INA policy. Thus, if plaintiff's stamps had been "scheduled," i. e., "separately described and enumerated," plaintiff could have recovered from Liberty Mutual up to the amount for which each stamp had been scheduled; whereas, by not being scheduled, plaintiff could only recover the actual cash market value of each stamp, not to exceed $250 per stamp.

We conclude, therefore, that plaintiff's stamps were not "separately described and enumerated and specifically insured" in the Liberty Mutual policy, and, therefore, did not fall within the exception from coverage of the INA policy.

One other issue requires consideration by the court. Plaintiff sought to introduce in evidence as "P-3" a letter from a "Service Representative" of Liberty Mutual to plaintiff, which was sent at the time plaintiff renewed his policy with Liberty Mutual. The letter explains the difference between "scheduled" and "unscheduled" stamps, and specifies plaintiff's stamps as "unscheduled." Decision was reserved on this offer.

We have concluded that, while P-3 is relevant, it is clearly hearsay and does not qualify under any of the recognized exceptions to the hearsay rule. Accordingly, we find, and so hold, that P-3 is inadmissible.

For the foregoing reasons, we hold that plaintiff has established by a preponderance of the evidence that the stamps stolen from him were covered by the policy issued by defendant, Insurance Company of North America, and that, therefore, a further hearing is required on the question of damages. Accordingly, counsel for the parties shall request the deputy court administrator for civil listings to fix a date and courtroom for such hearing.